UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALFRED ANTHONY CARSON,

               Plaintiff,

v.

UNKNOWN GOWDY et al.,

               Defendants.

_____/

Case No. 2:25-cv-134

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis.*

Pursuant to Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Prisk and Hares. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against

Defendants Washington, Schroeder, Wealton, Havenor, Baldini, Hoult, Bolton, Leach, and Bush. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Gowdy and ERT C.O. Members: all official capacity claims, Eighth Amendment claims related to the use of the chemical agent, Fourteenth Amendment due process claims, and claims related to Plaintiff's grievances. Plaintiff's Eighth Amendment excessive force claims against Defendants Gowdy and ERT C.O. Members for punching Plaintiff in the head while Plaintiff was restrained with a hood over his head and making Plaintiff stand in a shower so hot that it made feel as though Plaintiff's "skin was melting off [his] body" remain in the case.

<u>**Discussion**</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and the following MBP staff: Inspector Unknown Gowdy, Sergeant C. Perry, Warden Sarah Schroeder, Deputy Warden Michelle Wealton, Lieutenant Havenor, Captain Unknown Baldini, Assistant Deputy Warden Jerry Hoult, Grievance Coordinator Quentin Bolton, Inspector Mike Leach, Inspector Matt Bush, Unnamed Parties "ERT C.O. Members," Chaplain Thomas Prisk, and Mental Health Chief Mark Hares. (Compl., ECF No. 1, PageID.3–5.)

Plaintiff alleges that, on January 29, 2025, Plaintiff was using the toilet "with [his] blue cover up" when Defendant Gowdy told Plaintiff "to remove [his] cover." (*Id.*, PageID.6; ECF No. 1-1, PageID.14.) Plaintiff told Defendant Gowdy that he was using the toilet, and Defendant Gowdy gave Plaintiff two minutes to finish. (Compl., ECF No. 1, PageID.6.)

When Defendant Gowdy returned, Plaintiff removed the cover and resumed using the toilet without the cover. (*Id.*) During that time, "5 plus other ERT C.O.s" arrived and Defendant Gowdy

told Plaintiff to "come & cuff up." (*Id.*; ECF No. 1-1, PageID.14.) Plaintiff refused to comply, telling Defendants that he had done what he had been told and that he would not leave without his television. (Compl., ECF No. 1, PageID.6.) Defendant Gowdy left and returned with more Defendants ERT C.O. Members (*Id.*) At that time, Plaintiff sat down on the floor cross-legged. (*Id.*) Defendants ERT C.O. Members then sprayed Plaintiff with a chemical agent, made Plaintiff "strip naked, then put the same mace drenched clothes back on." (*Id.*; ECF No. 1-1, PageID.14.) Defendants ERT C.O. Members then cuffed Plaintiff, strapped him to chair, and removed him from the unit. (*Id.*)

While Plaintiff was being transported, Defendants ERT C.O. Members placed a hood over Plaintiff's head, one Defendant punched Plaintiff, and Defendants ERT C.O. Members threw Plaintiff into a shower with the hot water running. (Compl., ECF No. 1, PageID.6.) "[I]t felt like [Plaintiff's] skin was melting off [his] body." (*Id.*) Plaintiff's hood and handcuffs were removed, Plaintiff was stripped again, showered, and made to put the same clothes back on. (*Id.*)

Plaintiff was again handcuffed and taken to a cell where he "screamed until [he] received medical attention." (*Id.*) "They" finally took Plaintiff's wet clothes, gave Plaintiff saline, and took Plaintiff to the infirmary for medical attention. (*Id.*, PageID.6–7.) Plaintiff submitted a grievance regarding these events; however, his grievance was denied. (*Id.*, PageID.7.)

Defendant Gowdy charged Plaintiff with misconduct. (ECF No. 1-1, PageID.12.) Plaintiff was ultimately found guilty of disobeying a direct order, a class I misconduct. (*Id.*) Non-party Hearing Officer Mohrman noted that Plaintiff pleaded "guilty." (*Id.*)

At the conclusion of Plaintiff's factual allegations related to this series of incidents, Plaintiff itemizes the alleged "personal involvement" of Defendants Gowdy, Perry, Schroeder, Wealton, Havenor, Baldini, Hoult, Bolton, Leach, Bush, and Defendants ERT C.O. Members.

(Compl., ECF No. 1, PageID.7.) Specifically, Plaintiff alleges that Defendants Gowdy and Defendants ERT C.O. Members were involved in the "gassing incident" and that Defendant Gowdy wrote the misconduct report for disobeying a direct order. (*Id.*) Defendant Washington is identified as the "Director of MDOC," while Defendants Schroeder, Wealton, and Hoult are identified as the Warden, Deputy Warden, and Assistant Deputy Warden at the time of the incident, respectively. (*Id.*) Defendants Bush and Leach are listed as having been "Investigator[s] during incident," Defendant Perry is listed as having reviewed Plaintiff's misconduct charge, and the Defendants Schroeder, Havenor, Baldini, and Bolton are identified as having played a role in responding to Plaintiff's grievance. (*Id.*)

Plaintiff also includes in his complaint what he characterizes as a "related incident/claim," in which he alleges that he was denied religious services. (*Id.*, PageID.8.) Plaintiff alleges that Defendant Prisk "did not come around at all" and that he contacted "mental health," but did not receive a response for over a month. (*Id.*) Plaintiff filed grievances related to this issue and was told to watch religious services on his television; however, Plaintiff did not have a television as it was taken from him following the January 29, 2025, incident. (*Id.*) Plaintiff has attached to his complaint a notice of intent to conduct an administrative hearing regarding the disposal of personal property in Plaintiff's possession, dated January 30, 2025. (ECF No. 1-1, PageID.22–28.)

At the conclusion of the factual allegations related to this claim, Plaintiff itemizes the alleged "personal involvement" of Defendants Schroeder, Bolton, Hoult, Prisk, Hares, and Washington. (Compl., ECF No. 1, PageID.8.) Plaintiff claims that Defendants Schroeder, Bolton, and Hoult were responsible for signing off on various responses to Plaintiff's grievances, that Defendant Prisk received Plaintiff's kites regarding religious services and responded to Plaintiff's

grievance, that Defendant Hares was the "Mental Health Chief during this incident," and that Defendant Washington is the "Director of MDOC." (*Id.*)

As a result of the events described within Plaintiff's complaint, Plaintiff requests that Defendants "answer" and be "held accountable for" their actions. (*Id.*, PageID.9.) Plaintiff also seeks monetary compensation. (*Id.*)

## II.    Misjoinder

### A.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Pace v. Timmermann's Ranch and Saddle Shop Inc.*, 795 F.3d 748, 754 n.10 (7th Cir.

2015), *and Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Plaintiff first describes the events of January 29, 2025, beginning with the actions of Defendant Gowdy.[1] (ECF No. 1, PageID.6.) Plaintiff's claims against Defendant Gowdy are based upon Defendant Gowdy's orders to Plaintiff, misconduct charge for disobeying a direct order, and the subsequent use of force. (*Id.*) Plaintiff alleges that Defendants ERT C.O. Members joined Defendant Gowdy in the January 29, 2025, use of force, that Defendants Washington, Schroeder, Wealton, and Hoult held supervisory roles at the time of the January 29, 2025, incident, that Defendants Bush and Leach served as inspectors during that time, that Defendant Perry reviewed Plaintiff's misconduct charge, and that the remaining Defendants, as well as Defendant Schroeder, played a role in responding to Plaintiff's grievance. (*Id.*) The Court will address Plaintiff's claims against these Defendants as transactionally related to Plaintiff's claims against Defendant Gowdy.

---

[1] The analysis of joinder must start somewhere. Plaintiff's factual allegations against Defendant Gowdy are the first allegations described in Plaintiff's complaint and are alleged to have occurred first in time. By accepting Defendant Gowdy as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

However, no matter how liberally the Court construes Plaintiff's allegations, Plaintiff has not stated at least "one claim against [Defendants Prisk and Hares] [that] is transactionally related to the claim against the first defendant, and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (citations omitted). Plaintiff's claims against Defendants Prisk and Hares involve claims for the denial of religious services and mental health care in March of 2025 (*see* ECF No. 1-1, PageID.22) and are entirely unconnected to Defendant Gowdy's January 29, 2025, use of force and misconduct report. Although Plaintiff attempts to connect the events by claiming that he was unable to watch religious services on his television because it was taken from him as a result of the January 29, 2025, events, Plaintiff's complaint does not suggest that Defendants Prisk and Hares played any role in the removal of Plaintiff's television or that the fact of the removal of Plaintiff's television would otherwise be at issue in Plaintiff's claims against Defendants Prisk and Hares such that it could be said that the claims involve common questions of law or fact. Accordingly, the Court concludes that, while Gowdy, Perry, Schroeder, Wealton, Havenor, Baldini, Hoult, Bolton, Leach, Bush, and ERT C.O. Members are properly joined, Plaintiff has improperly joined Defendants Prisk and Hares.

**B.    Remedy**

Because the Court has concluded that Plaintiff has improperly joined Defendants Prisk and Hares to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. Civ. P. R. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v.*

8

*Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's claims against Defendants Prisk and Hares arose no earlier than March 2025. Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendants Prisk and Hares, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if claims against Defendants Prisk and Hares are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Prisk

and Hares because they are misjoined, and the Court will dismiss Plaintiff's claims against them

without prejudice to the institution of a new, separate lawsuit.[2] *See Coughlin v. Rogers*, 130 F.3d

1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named

plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

---

[2] If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he may do so by filing a new civil action on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration does mean that all claims arising out these events are properly joined.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues several Defendants in their official as well as personal capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through

11

the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim against Defendants in their official capacities upon which relief can be granted.

Plaintiff also appears to seek injunctive relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

Here, Plaintiff's complaint concerns only past conduct, including the misconduct charge and use of force on January 29, 2025. Plaintiff has not alleged any ongoing violation of federal law. Therefore, Plaintiff's complaint does not seek relief properly characterized as prospective, and the Court will dismiss Plaintiff's official capacity claims in their entirety.

### B.    Claims Against Defendants Washington, Schroeder, Wealton, Havenor, Baldini, Hoult, Bolton, Leach, and Bush

Plaintiff brings claims against Defendants Washington, Schroeder, Wealton, Havenor, Baldini, Hoult, Bolton, Leach, and Bush either because of their supervisory roles or because of their roles in responding to Plaintiff's grievances. (Compl., ECF No. 1, PageID.7.) Neither of these roles are sufficient to confer liability under § 1983.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts that would plausibly suggest that Defendants Washington, Schroeder, Wealton, Havenor, Baldini, Hoult, Bolton, Leach, and Bush authorized, approved, or knowingly acquiesced in any unconstitutional conduct. Indeed, Plaintiff fails to allege that any of the foregoing Defendants were aware of the events of January 29, 2025, until after they occurred. Therefore, Plaintiff fails to state a claim against Defendants Washington, Schroeder, Wealton, Havenor, Baldini, Hoult, Bolton, Leach, and Bush and his claims against them will be dismissed.

### C.    Eighth Amendment Excessive Force Claims

Plaintiff claims that Defendants Gowdy and ERT C.O. Members used excessive force against him on January 29, 2025. (Compl., ECF No. 1, PageID.6–7.) The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of

14

prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of

15

decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff first alleges that, although he "did what [he] was told," Defendants Gowdy and ERT C.O. Members returned to Plaintiff's cell and Defendant Gowdy told Plaintiff to "come & cuff up." (Compl., ECF No.1, PageID.6.) Plaintiff refused and, upon the return of these Defendants, Plaintiff "sat down peacefully on [his] floor." (*Id.*) Defendants sprayed Plaintiff with a chemical agent. (*Id.*) These allegations, taken as true, do not amount to an Eighth Amendment violation. Specifically, Plaintiff acknowledges that he deliberately disobeyed Defendant Gowdy's order. (ECF No. 1-1, PageID.12.) The Sixth Circuit has repeatedly held that the use of a chemical agent does not constitute cruel and unusual punishment where it is used to secure compliance after the plaintiff refused a direct order. *See, e.g., Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) ("[T]he use of mace to control a prison inmate is not malicious or sadistic."); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that the use of pepper spray on an inmate who repeatedly disobeyed direct orders to leave the shower did not violate the inmate's Eighth Amendment rights); *Davis v. Agosto*, 89 F. App'x 523, 526 (6th Cir. 2004) (holding that the use of mace was not malicious or sadistic where prisoner refused to comply with a direct order and remained recalcitrant). Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims to the extent the claim is premised upon the use of the chemical agent.

However, Plaintiff also alleges that one of the Defendants punched Plaintiff in the head while Plaintiff was restrained with a hood over his head, and that Defendants Gowdy and ERT C.O. Members made Plaintiff stand in a shower so hot that it made feel as though Plaintiff's "skin was melting off [his] body." (Compl., ECF No. 1, PageID.6.) Taking these allegations as true as

is required at this stage, the Court will allow Plaintiff to proceed with his Eighth Amendment claims against Defendants Gowdy and ERT C.O. Members premised upon these limited events.

### D.    Fourteenth Amendment Due Process Claims

Plaintiff claims that he was issued a misconduct report by Defendant Gowdy and, as a result of his admitted misconduct, received 15 days' loss of privileges. (ECF No. 1-1, PageID.12.) Given that Plaintiff pleaded guilty to disobeying a direct order (*id.*), it is unclear what claim Plaintiff intends to raise related to this misconduct charge. However, to the extent that Plaintiff seeks to raise a Fourteenth Amendment due process claim, even setting aside his guilty plea, Plaintiff cannot state a claim upon which relief can be granted.

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The allegations of Plaintiff's complaint do not plausibly suggest that Plaintiff's misconduct charge could have affected any interests that would fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is

17

serving an indeterminate sentence for an offense committed after 2000,[3] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantange*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. If confinement in segregation does not implicate a protected liberty interest, it follows that the lesser sanction of "loss of privileges" would not implicate such an interest.

For each of the foregoing reasons, the deprivations asserted by Plaintiff were insufficient to trigger a right to due process. Therefore, any due process claim related to Plaintiff's misconduct ticket is properly dismissed.

### E.    Claims Related to Plaintiff's Grievances

Plaintiff also makes repeated reference to his grievances. However, Plaintiff cannot state a § 1983 claim related to the grievance process. As discussed above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. Moreover, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt*

---

[3] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=786076 (last visited June 26, 2025).

*v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the administrative grievance process, Defendants' conduct could not be said to have deprived Plaintiff of due process.

To the extent alleged, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v.*

*Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24

(1977). The exhaustion requirement only mandates exhaustion of *available* administrative

remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance

process, the process would be rendered unavailable, and exhaustion would not be a prerequisite

for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating

that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials,

the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F.

App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff fails to state any claim against

Defendants based on their handling of Plaintiff's grievances.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, pursuant to Rule

21, the Court determines that Defendants Prisk and Hares will be dropped as misjoined and the

Court will dismiss Plaintiff's claims against these Defendants without prejudice pursuant to Rule

21.

Additionally, having conducted the review required by the PLRA, the Court determines

that Defendants Washington, Schroeder, Wealton, Havenor, Baldini, Hoult, Bolton, Leach, and

Bush will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b),

and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following

claims against remaining Defendants Gowdy and ERT C.O. Members: all official capacity claims,

Eighth Amendment claims related to the use of the chemical agent, Fourteenth Amendment due

process claims, and claims related to Plaintiff's grievances. Plaintiff's Eighth Amendment

excessive force claims against Defendants Gowdy and ERT C.O. Members for punching Plaintiff

in the head while Plaintiff was restrained with a hood over his head and making Plaintiff stand in

20

a shower so hot that it made feel as though Plaintiff's "skin was melting off [his] body" remain in the case.

An Order consistent with this Opinion will be entered.


Dated:      July 11, 2025                            /s/ Jane M. Beckering
                                                     Jane M. Beckering
                                                     United States District Judge